# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION

| | |
|---|---|
| **D'SHAYVON BAKER ET AL.** | **PLAINTIFFS** |
| v. | No. 5:24-cv-1-BJB |
| **SEAN BEAN, ET AL.** | **DEFENDANTS** |

\* \* \* \* \*

## MEMORANDUM OPINION & ORDER

This is yet another case in a string of lawsuits involving former Commonwealth's Attorney Richard Boling. Plaintiffs D'Shayvon Baker and Kyreisha Williams have brought claims against Boling, Officer Sean Bean, Chief Jason Newby, the Hopkinsville Police Department, and the City of Hopkinsville. Amended Complaint (DN 30).[1] The Plaintiffs assert various civil-rights violations arising from Baker's 2021 arrest and (subsequently dismissed) prosecution. ¶ 24. The Defendants—Boling in one motion, the remaining "Hopkinsville Defendants" in another—have moved to dismiss the Amended Complaint under various theories including prosecutorial immunity, duplicative pleading, and statutes of limitations.[2]

An initial observation that colors all that follows: This is not an easy case to untangle at the pleading stage. The parties' pleadings, motions, and responses are scattered in their factual recitation, imprecise in their legal discussions, and disorganized in basic formatting. At this early juncture, the Court treats the plausible pleadings as true and reads them as charitably as possible—but does not attempt to actually improve or supplement the arguments of counsel on either side. *See, e.g.*, *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 716 (6th Cir. 2005).[3]

---

[1] The Hopkinsville Police Department isn't a suable juridical entity. Instead, claims against the Department run against the City. *See Gibson v. City of Sturgis, Kentucky*, No. 4:17-cv-21, 2017 WL 1347693, at *2 (W.D. Ky. Apr. 10, 2017) ("Since the Police Department is not an entity which may be sued, Jefferson County is the proper party to address the allegations of Matthews's complaint.") (citing *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994)).

[2] *See* Boling Motion to Dismiss (DN 34-1); Bean, the Hopkinsville Police Department, and Newby Motion for Judgment on the Pleadings (DN 35) (albeit labeled in the docket as a motion to dismiss).

[3] The same standard applies in response to the motion for judgment on the pleadings and the motion to dismiss. *See also Scott v. City of Cleveland*, No. 1:13-cv-2020, 2013 WL 6797790, at *1 (N.D. Ohio Dec. 23, 2013) ("A motion for judgment on the pleadings is governed by the

The posture changes, of course, at summary judgment and trial. That means some claims that may ultimately prove futile nevertheless survive these motions to dismiss because the Defendants have not shown the impossibility of recovery as a matter of law.

**I. The Allegations.** According to the Amended Complaint—which the Court accepts as true at this stage, the Christian County Circuit Court issued a warrant for Baker's arrest on October 19, 2021, for third-degree burglary. Amended Complaint ¶ 19. The warrant rested on testimony from Bean. *Id.* The next day, Baker was "a passenger in the backseat" of a car along with three unnamed women in Grayson County, Kentucky. An officer with the Grayson County Sheriff's Office then stopped the car for a traffic violation. ¶ 20. During the stop, the officer found a Glock 40 handgun—belonging to Williams, who was not in the vehicle—inside the car. ¶¶ 21, 25. No one in the car admitted ownership. ¶ 22. Baker was arrested on the warrant and, because he was a felon, was also charged in Grayson District Court with unlawful possession of the handgun. ¶¶ 23–24.[4] According to the Amended Complaint, the gun actually belonged to Kyreisha Williams, a co-plaintiff here. ¶ 25. None of the Plaintiffs' pleadings indicate how Williams and Baker knew each other or why her gun was in the car on October 20 in Grayson County. The Hopkinsville Defendants, for their part, describe Baker and Williams as siblings—though in support they cite a paragraph from the Amended Complaint that says nothing of the sort. Motion for Judgment on the Pleadings (DN 35) at 2.

The next day, the Hopkinsville Police Department and Christian County Commonwealth's Attorney's Office got involved. Boling (the chief prosecutor) and Bean (a Hopkinsville Police Officer), and other unnamed detectives contacted the Grayson County Sheriff's Office. Amended Complaint ¶¶ 27–28. The Glock, they maintained, was "evidence of a crime in Christian County," and "they needed to take

---

same standard as a motion to dismiss for failure to state a claim.") (citing *Warrior Sports, Inc. v. National Collegiate Athletic Ass'n,* 623 F.3d 281, 284 (6th Cir. 2010)).

[4] The Amended Complaint states that Baker "was arraigned from October 20, 2021, through December 10, 2021," in Grayson County, ¶ 29, and again "was arraigned" from "February 15, 2022, through April 18, 2023," in Christian County, ¶ 30. Which doesn't make much sense, given that an arraignment is typically a single, short criminal hearing—not the persistent state of legal limbo that Baker suggests. The motion for judgment on the pleadings filed by the Hopkinsville Defendants (the City, Newby, and Bean), offers a somewhat clearer picture of the chain of events—suggesting Baker was detained awaiting trial for about five months on the Christian County charges. *See* MJOP at 3 ("Baker did not file the instant lawsuit until January 3, 2024, one year and seven months after he waived formal arraignment and one year and two months after he was released from Christian County Jail.") (internal citation omitted). Baker's response doesn't appear to dispute their characterization. *See* Response to MJOP (DN 37) at 6.

possession" of it. ¶ 27. This was all part of Bean and Boling's "plan to manufacture evidence" against Baker. ¶ 26.

On April 18, 2023, Baker "entered into a guilty plea agreement for an amended … lessor charge." ¶ 30. Then, "[o]n May 5, 2022, Baker was again arrested" in response to an indictment issued in Christian County. ¶ 38. The grand jury charged him with two criminal offenses: "(1) KRS 527.040 Possession of Handgun by Convicted felon and (2) KRS 414.030 [Theft By Unlawful Taking or Disposition] of Firearm." *Id.* Baker waived formal arraignment on May 11, 2022, MJOP at 2, and was released from Christian County Jail on October 25, 2022, *id.* at 3. (The pleadings don't make clear whether he was held in custody or released on bond during this period.) On January 4, 2023, the Christian Circuit Court dismissed the charges against Baker. Amended Complaint ¶ 49.[5]

Meanwhile, Williams repeatedly sought return of her firearm. First she asked the Grayson County Sheriff's Office; then she learned the Hopkinsville Police Department had it. ¶¶ 31–32. But the Hopkinsville Police Department—which Newby headed at the time—refused. *Id.*

The Plaintiffs allege that these actions were part of a broader pattern of misconduct by local officials in Hopkinsville and Christian County. Aside from their own experiences, they point to reports of prosecutorial misconduct against Boling that stretch back years. *See, e.g.*, ¶ 66. Boling resigned in February 2023 and was later suspended from legal practice for five years.

**II. The Claims and Defenses.** While the Court will not and should not recharacterize the parties' pleadings and defenses for them, some degree of order must be imposed before intelligible decisionmaking can follow. So the Court sets forth the following taxonomy of claims and defenses. To the extent the parties believe this mistakenly confuses the issues that remain in the case, they are free—indeed most welcome—to supply clarity during the discovery and summary-judgment practice that may lie ahead.

Baker has asserted seven claims in total. Five run against Boling and Bean; one runs against Boling and the City; and one against Boling, the City, and Newby. The Defendants mostly urge dismissal based on the statute of limitations and

---

[5] According to Baker, the charges were dismissed "by motion of the new[ly] appointed Christian County Commonwealth's Attorney"—Stephanie Bolen—after she replaced Boling. Amended Complaint ¶¶ 48–49. But Governor Beshear doesn't appear to have appointed Bolen until February 28, 2023—almost two months after Baker's charges were dismissed. *See* News Edge Newsroom, *Stephanie Bolen Appointed Christian County Commonwealth Attorney*, WKDZ Radio (Feb. 28, 2023), https://www.wkdzradio.com/2023/02/28/stephanie-bolen-appointed-as-christian-county-commonwealth-attorney/news-edge/.

3

prosecutorial immunity—and these arguments largely succeed. As discussed below, Baker's only claims that survive the motions to dismiss are (a) his *Monell* claim against the City, (b) his federal and state malicious-prosecution claims against Bean in his individual and official capacities, and (c) federal and state malicious-prosecution claims against Boling only in his individual capacity and only to the extent he was acting in an investigative (rather than prosecutorial) capacity. Baker's failure-to-train (and supervise) claims, his federal and state false-arrest and assault-and-battery claims, his individual-capacity *Monell* claim, and his claim for malicious-prosecution (as applied to prosecutorial functions) all fail under Rule 12(b)(6).

Williams has asserted three claims in total—depending on how one counts her omnibus property-rights claims. All run against Bean, Boling, Newby, and the Hopkinsville Police Department. Each Defendant asserts the statute of limitations in support of dismissing all claims, while Boling also raises prosecutorial immunity. Only her trespass claims in Counts V and IX survive.

## A. Count I – "42 U.S.C. § 1983 Monell-Related Cause of Action (By Baker Against Defendants Boling and City)"

Baker brings *Monell* claims against the City and Boling—"in his official and individual capacit[ies]"—for violations of unnamed constitutional amendments. Amended Complaint at ¶¶ 58–64.[6] Under *Monell v. Department of Social Services*, municipalities may be held liable under § 1983 if their policy, custom, or practice causes a constitutional violation. 436 U.S. 658, 694–95 (1978). A suit against a government official in his official capacity is essentially a suit against the government itself—and is therefore subject to the same rule. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985).

What about Baker's *Monell* claim against Boling? According to the former prosecutor, "*Monell* claims apply to municipalities or other governing bodies, not to claims against individuals in either their official *or* individual capacity." Motion to Dismiss (DN 34-1) at 9 (emphasis added).

This is partially true: courts have held that "a *Monell* claim against a party in an individual capacity is improper." *Thomas v. City of Circleville*, No. 2:23-cv-1474, 2023 WL 3742988, at *5 (S.D. Ohio May 31, 2023), *report and recommendation adopted*, 2023 WL 4366544 (S.D. Ohio July 6, 2023) (cleaned up). To the extent the Plaintiffs assert a *Monell* claim against Boling in his *individual* capacity, that claim must be dismissed; the *Monell* doctrine applies only to municipalities and not officials

---

[6] While the Amended Complaint doesn't explicitly cite a constitutional provision in connection with the *Monell* claim, Plaintiff's counsel represented during the May 28 hearing that it rests on Fourth Amendment violations. *See* DN 42. But he didn't offer any legal theory more specific than that.

4

sued in their individual capacities. *See id.* Baker never explains why an individual officer's liability would hinge on the existence of an official "custom, policy, or practice," a requirement that applies only to municipal liability under *Monell*. Under § 1983, a plaintiff would presumably just sue the officer directly—subject to the limitations of various immunities and other defenses.

But Boling is wrong to contend that *Monell* claims against government officials in their *official* capacities are barred. *See, e.g.*, *Crabbs v. Scott*, No. 2:12-cv-1126, 2018 WL 10345278, at *1 (S.D. Ohio Apr. 9, 2018) ("[B]oth claims are *Monell* claims against Sheriff Scott in his official capacity."); *Featherstone v. Graham*, No. 2:08-cv-690, 2009 WL 5030793, at *5 (S.D. Ohio Dec. 11, 2009) ("the Complaint contains only an official capacity claim that falls under *Monell*."). Because such official-capacity suits are effectively suits against the government, they would fall comfortably within *Monell*'s ambit.

This would be simple enough if the Commonwealth were a party to this lawsuit. An official-capacity suit against Boling—an officer in the Commonwealth's Attorney's Office—would essentially be a suit against the state. *Graham*, 473 U.S. at 165–66 (1985) ("Official-capacity suits ... 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell*, 436 U.S. at 690 n.55); *see, e.g.*, *Nelson v. Kentucky*, No. 5:23-cv-14, 2023 WL 1863162, at *1 (E.D. Ky. Feb. 9, 2023) ("Nelson's 'official capacity' claims against Engle and Jessica"—"both of whom he identifies as prosecuting attorneys employed by the Commonwealth"—"are construed as claims against the Commonwealth's Attorney's Office."). Normally this is practically immaterial if a plaintiff names and serves both officer and agency as defendants. "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Mumford v. Basinski*, 105 F.3d 264, 270 n.8 (6th Cir. 1997) (quoting *Graham*, 473 U.S. at 165–66).

But the Commonwealth's Attorney's Office is not a party to this lawsuit. Nor is the Commonwealth itself. So the "official capacity litigation is independently fatally defective" because no defendant is properly before the court to face it. *Id.* So the claim asserted against Boling, purportedly in his official capacity, fails because it doesn't state a claim against him personally and hasn't been properly asserted against any other defendant that might be liable based on Baker's allegations. *See Cleary v. City of Hudson, Ohio*, No. 5:12-cv-1943, 2013 WL 5557394, at *2 (N.D. Ohio Oct. 7, 2013) ("[S]ervice of a defendant sued in his official capacity must be made under Fed. R. Civ. P. 4(j)."); FED. R. CIV. P. 4(j)(2) ("A state, a municipal corporation, or any other state-created governmental organization that is subject to suit must be served by: (A) delivering a copy of the summons and of the complaint to its chief executive officer; or (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant."). And even if the

Commonwealth's Attorney's Office had been named and served, it would presumably assert sovereign immunity under state and federal law. *See, e.g.*, *Walden v. Pryor*, No. 5:18-cv-171, 2019 WL 2441838, at *2 (W.D. Ky. June 11, 2019) (Commonwealth's Attorney's Office is shielded from suit under the Kentucky Constitution); *Mumford*, 105 F.3d at 267 ("[U]nlike counties and municipalities, *state* governments, and their arms, officers, and instrumentalities, are generally immune from private lawsuit in federal court by virtue of the Eleventh Amendment to the United States Constitution.").

The City's response rests on the statute of limitations. MJOP at 4–7. It argues that the limitations period began on May 11, 2022—the date of the alleged unlawful arrest. But it's hardly clear that Baker's *Monell* claim turns exclusively on his wrongful arrest. The charges stemming from that arrest weren't dismissed until January 4, 2023—a date within the limitations period. Amended Complaint ¶ 49. And although the parties largely do not discuss the point, the limitations period for misconduct claims such as these may not begin while criminal charges stemming from that misconduct remain pending. *Mills v. Barnard*, 869 F.3d 473, 484 (6th Cir. 2017) (§ 1983 claim for evidence fabrication didn't accrue until the related criminal proceeding had terminated). Accordingly, Baker's *Monell* claim does not appear to have accrued until the charges were dismissed. *See, e.g.*, *Jenkins v. Louisville-Jefferson County Metro Government*, No. 3:17-cv-151, 2018 WL 345119, at *7 (W.D. Ky. Jan. 9, 2018) (fabrication-of-evidence claim accrued upon dismissal of charges).

Nothing on the face of the pleadings, at any rate, *shows* that the limitations period began and ended before Baker filed this lawsuit. Which creates a problem for the City's untimeliness defense: if the triggering event isn't pled, this affirmative defense may not ripen until discovery and summary judgment. "[B]ecause the statute of limitations is an affirmative defense, a 12(b)(6) motion to dismiss 'is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations.'" *Pratt v. KSE Sportsman Media, Inc.*, 586 F. Supp. 3d 666, 671 (E.D. Mich. 2022) (quoting *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012)).[7] One response, of course, could be to urge dismissal under Rule 8 (or at least clarification under Rule 12(c)), based on implausible or incomprehensible pleadings. Certainly neither the pleadings nor Baker's response make clear that Baker relies on some date *after* the wrongful arrest to come within the statute of limitations. But then again, neither has he made clear that he relies *solely* on the arrest or the events preceding it. Regardless, the City hasn't moved to dismiss under Rule 8, so it's left urging

---

[7] "Yet there are exceptions to this general rule, including 'if the allegations, for example, show that relief is barred by the applicable statute of limitations.'" *Pratt v. KSE Sportsman Media, Inc.*, 586 F. Supp. 3d 666, 671 (E.D. Mich. 2022) (quoting *Jones v. Bock*, 549 U.S. 199, 215 (2007) (citing FED. R. CIV. P. 8(c))).

dismissal based on a limitations period whose start isn't clearly apparent from the papers at this stage. While this might conceivably amount to a meritorious defense, it's not an obvious or obviously ripe one. Affording the Amended Complaint every reasonable benefit of the doubt, therefore, the motion to dismiss this claim based on the statute of limitations fails.

Count I may proceed against the City, but the Court grants Boling's motion to dismiss Count I against him in both his official and individual capacities.

### B. Count IV – "42 U.S.C. § 1983 Malicious Prosecution Claim Pursuant to 42 U.S.C. § 1983 to the United States Constitution (By Baker Against Both Defendants Officer Bean and Boling)"

Baker also brings federal malicious-prosecution claims against Bean and Boling—presumably under the Fourth Amendment, though the Amended Complaint doesn't say[8]—in both their individual and official capacities. Amended Complaint at ¶¶ 73–77 & p. 17 (Count IV).[9]

To the extent Baker brings an official-capacity claim against Bean, a Hopkinsville Police officer, the Court construes the claim as one against the City, as discussed above. *See Graham*, 473 U.S. at 165–66. And to the extent Baker brings an official-capacity claim against Boling, this claim effectively runs against the Commonwealth's Attorney's Office, which isn't a party to this lawsuit. *See id.* Because the Office isn't before the Court, the claim is "fatally defective." *See Mumford*, at 270 n.8. In any event, the Office would likely be protected by sovereign immunity. *Id.* at 267; *see* above at p. 6.

Boling asserts absolute prosecutorial immunity—presumably in both his individual and official capacities. MTD at 1, 8. But "[a]bsolute immunity is a personal defense that is unavailable in an official-capacity action." *Cady v. Arenac County*, 574 F.3d 334, 342 (6th Cir. 2009). Accordingly, Boling can't invoke absolute immunity to defeat the official-capacity claim—which is dismissed for the independent reasons stated above.

As to the individual-capacity claims, "prosecutors are absolutely immune," in their individual capacities, "from many malicious prosecution claims." *Spurlock v.*

---

[8] Though Baker doesn't cite a constitutional amendment regarding this claim, the Court construes this as a Fourth Amendment claim. *See Black v. Crone*, No. 3:20-cv-2869, 2021 WL 1697885, at *3 (N.D. Ohio Apr. 29, 2021) ("[A] claim of malicious prosecution arises under the Fourth Amendment.").

[9] Reflecting errors in other aspects of the lawyering in this case, the Amended Complaint duplicates paragraph numbers in multiple places. This count can also be found at page 17. Other such organizational errors are mitigated later in this opinion with citations to page as well as paragraph numbers.

7

*Thompson*, 330 F.3d 791, 797 (6th Cir. 2003).[10] "[C]ourts will bar § 1983 suits arising out of even unquestionably illegal or improper conduct by the prosecutor so long as the general nature of the action in question is part of the normal duties of a prosecutor." *Cady*, 574 F.3d at 340 (citing *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). But "[w]hen a prosecutor performs the *investigative* functions normally performed by a detective or police officer," absolute immunity does not apply. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) (emphasis added). In such situations, "it is 'neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other.'" *Id.* (quoting *Hampton v. Chicago*, 484 F.2d 602, 608 (7th Cir. 1973)). If a prosecutor enjoys immunity from suit when acting in these roles, then that protection emerges from qualified (rather than absolute) immunity. *Id.* at 275.

The Sixth Circuit applies "a 'functional approach'" to distinguish between prosecutorial and investigative activity. *Smith v. Wayne County, Michigan*, No. 24-1688, 2025 WL 2218488, at *3 (6th Cir. Aug. 5, 2025) (quoting *Imbler*, 424 U.S. at 430–31). Prosecutorial activity is "'intimately associated with the *judicial* phase of the criminal process,' such as when the prosecutor 'initiat[es] a prosecution and … present[s] the State's case.'" *Id.* (emphasis added). Preexisting Sixth Circuit precedent, the Court noted in *Smith*, "does not draw a clear line between a prosecutor's advocacy and investigatory functions." *Id.* at *4. Factors like the activity's timing "may *inform*" whether it is prosecutorial or investigatory, but no single factor "*control[s]* the activity's categorization." *Id.* at *6 (emphases added). Baker correctly points out that a prosecutor who "searches for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested" performs an investigative function, not a prosecutorial one. Response to MTD (DN 38) at 2 (quoting *Buckley*, 509 U.S. at 273). So the prosecutor would not be entitled to absolute immunity for such conduct.

This distinction between prosecutorial and investigative work is salient here. Some allegations against Boling unquestionably relate to prosecutorial functions. *See, e.g.*, Amended Complaint ¶ 74 (Count IV) ("Defendants caused a direct indictment."). Others, however, appear to allege investigative conduct. *See, e.g.*, ¶ 59.[11] And Boling hasn't yet asserted qualified immunity. So at this juncture, Boling

---

[10] *See also Grant v. Hollenbach*, 870 F.2d 1135, 1139 (6th Cir. 1989) (prosecutor immune from suits for deciding to investigate and conspiring to present false charges to grand jury); *McCollum v. Garrett*, 880 S.W.2d 530, 534 (Ky. 1994) (prosecutors immune based on professional evaluations of evidence and preparation for its presentation at trial or to grand jury).

[11] Allegations tied to the *Monell* claim, for example, accuse Boling and others of causing officers to perform "searches for clues and corroboration that might give them probable cause to recommend that a suspect be arrested, after they had the individuals criminally charged,

isn't entitled to dismissal of Count IV in its entirety. That claim may proceed against him in his individual capacity to the extent it alleges investigative conduct.[12]

Bean's principal response is to urge dismissal based on the allegedly duplicative nature of Baker's claims against the City in Counts I and II. MJOP at 17 (citing *Thorpe ex rel. D.T. v. Breathitt County Board of Education*, 932 F. Supp. 2d 799, 802 (E.D. Ky. 2013)). As previously mentioned, however, many of the allegations (and defenses) in this case are nebulous. Whether malicious-prosecution, *Monell*, and failure-to-train theories effectively merge, therefore, isn't clear from Bean's arguments or Baker's complaint. And Bean hasn't raised immunity in any form.

Count IV may proceed against Bean in his official and individual capacities and against Boling only in his individual capacity and only insofar as the claim alleges investigative conduct. And the Court dismisses Count IV against Boling in his official capacity for all allegations and in his individual capacity insofar as it alleges prosecutorial conduct with respect to Boling.

---

indicted, or arrested—prior to hav[ing] any such required probable cause for the criminal charge, indictment, or arrest of the individuals." Amended Complaint at ¶ 59; *see also* ¶¶ 44–47 (citing Commonwealth's Attorney's Office release and newspaper articles regarding misconduct in this office). Affording this material a generous reading, particularly in connection with other nonfrivolous allegations of discriminatory policing involving Boling, the Court declines to dismiss the malicious-prosecution count against Boling to the extent it alleges his involvement in functions that appear (at least at this stage) more investigative than prosecutorial.

[12] At this stage, the Court declines to categorize each allegation as either prosecutorial or investigative; the pleadings are too scattershot to allow such parsing without effectively repleading Baker's allegations. And, as noted above, the Defendants haven't filed any motion complaining about their notice or the pleadings' inadequacy under Rules 8 or 12. The Court's ruling tracks the distinction between prosecutorial and investigative acts drawn by the Sixth Circuit: "Prosecutors act as investigators and are entitled at most to only qualified immunity when giving legal advice to the police, including giving legal advice prior to the existence of probable cause and prior to the prosecutor's determination that he would initiate criminal proceedings against a defendant, fabricating false evidence before a special grand jury was empaneled, and directing the police's investigation, advising the police regarding the legality of the products seized from defendants, and propelling the officers to execute an operation to seize products prior to the initiation of judicial proceedings and without probable cause." *Watkins v. Healy*, 986 F.3d 648, 661 (6th Cir. 2021), *as corrected on denial of reh'g en banc* (Mar. 16, 2021) (cleaned up). Whether specific factual allegations and proof fall on the former or latter sides of this line is a question for summary judgment, not these motions.

9

### C. Count VII – "Kentucky Malicious Prosecution Claim (By Baker Against Both Defendants Officer Bean and Boling)"

Baker brings a Kentucky malicious-prosecution claim against Bean and Boling in their individual and official capacities. ¶¶ 79–82 & pp. 16–17 (Count VII).[13] Bean concedes that this claim isn't subject to dismissal at this stage, not asserting any form of immunity. *See* MJOP at 1. But Boling claims absolute immunity—presumably in both his individual and official capacities. MTD at 8.

"Similar to federal law, Kentucky offers both absolute immunity and qualified immunity to prosecutors." *Howell v. Sanders*, 668 F.3d 344, 355 (6th Cir. 2012) (citing *Jefferson County Commonwealth Attorney's Office v. Kaplan*, 65 S.W.3d 916, 920 (Ky. 2002)). "Kentucky also uses function as the dividing line, providing absolute immunity for a prosecutor's actions taken as an advocate and only qualified immunity for those taken as an investigator." *Id.* (citing *McCollum v. Garrett*, 880 S.W.2d 530, 535 (Ky. 1994)). Accordingly, at this juncture, Boling isn't entitled to dismissal of Count VII against him in his individual capacity insofar as it alleges investigative conduct.

As for the official-capacity claim against Boling, in Kentucky, "the Commonwealth and the Commonwealth Attorney's Office are both shielded from suit unless the General Assembly has waived its [sovereign] immunity." *Walden*, 2019 WL 2441838, at *2 (citing Ky. Const. § 231). Under federal law, that means the official-capacity suit against Boling is effectively a suit against the (non-party) Commonwealth's Attorney's Office. *Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008) ("A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."). "And a government officer sued in [his] official capacity is 'cloaked with the same immunity as the government or agency h[e] represents.'" *Napper v. Hankison*, 617 F. Supp. 3d 703, 750 (W.D. Ky. 2022) (quoting *Schwindel v. Meade County*, 113 S.W.3d 159, 169 (Ky. 2003)). Accordingly, Boling is absolutely immune—at least in his official capacity—from the malicious-prosecution claim arising under Kentucky law. And regardless, the Commonwealth's Attorney's Office isn't a party to this suit, so the claim cannot stand. *See Cleary*, 2013 WL 5557394, at *2.

As with Count IV above, therefore, Count VII may proceed against Bean in its entirety and against Boling—in his individual capacity only—insofar as the count

---

[13] The Court notes that "[a]n official capacity claim against a Kentucky prosecutor is a claim against the Commonwealth itself, and is therefore barred by the Eleventh Amendment." *Troxell v. Morgan*, No. 6:22-cv-41, 2022 WL 2533377, at *1 (E.D. Ky. July 7, 2022) (citing *Boone v. Kentucky*, 72 F. App'x 306, 307 (6th Cir. 2003)). Accordingly, to the extent Baker asserts an official-capacity state-law malicious-prosecution claim ageinst Boling, the Court dismisses it.

alleges investigative conduct. The Court grants the motion to dismiss Count VII insofar as it rests on allegations of prosecutorial conduct by Boling. *See* above at nn.11–12.

### D. Count V – § 1983 "Trespass to Property / Wrongful Taking / Conversion" Claim & Count IX – "Kentucky Trespass to Property / Wrongful Taking / Conversion" Claim

Williams also brings a sort of omnibus property claim in Counts V and IX. The two counts divide federal and state claims, and they are styled in a manner the Court won't try to parse or recharacterize[14]: "trespass to property[15] / wrongful taking / conversion" under federal law (§ 1983) and state law against Bean, Boling, Newby, and the Hopkinsville Police Department. Amended Complaint ¶¶ 78–84 & pp. 17–18 (Count V); ¶¶ 88–94 & pp. 20–21 (Count IX).

**1.** Each Defendant raises the limitations period in support of dismissal.[16] But Bean, Newby, and the Hopkinsville Police Department cite only the statute of

---

[14] The risk of effectively revising the Amended Complaint through judicial interpretation runs throughout this Opinion. That's the main reason the Opinion's section headers merely quote rather than summarize or clarify the nature of each count. Presenting the Plaintiffs' own descriptions in quotation marks, of course, carries its own cost in clarity. As Thomas Sowell would remind us, "there are no solutions, only trade-offs."

[15] Though the Amended Complaint refers to "trespass to property," the Court construes this as a "trespass to chattels" claim. This dispute concerns a gun—not real property. *See Michael Pellis Architecture PLC v. M.L. Bell Constr. LLC*, 693 F. Supp. 3d 594, 608 (E.D. Va. 2023) ("Like conversion, the tort of trespass to chattels has traditionally protected only interests in tangible property over which one can exert physical control.") (citing RESTATEMENT (SECOND) OF TORTS §§ 216–217 (A.L.I. 1965); *Chattel*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("Movable or transferable property; personal property; esp., a physical object capable of manual delivery and not the subject matter of real property.")).

[16] Boling asserts at the outset that he's "entitled to absolute prosecutorial immunity from all claims." MTD at 1. And his brief later states that such immunity extends to "common law tort actions such as the Kentucky state law claims asserted in the Amended Complaint." *Id.* at 4. Although Boling does mention immunity in connection with the conversion claim—arguing that "every action alleged … to be taken by Boling was related to the pursuit of Baker's criminal prosecution," *id.* at 5, and characterizing the conversion claim as part of that prosecution, *id.* at 7—he does not analyze how absolute immunity applies to these specific property claims or address the relevant legal standard. The Court therefore declines to resolve the immunity issue at this stage. *See McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) (courts needn't consider arguments "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation"); *see also Matheson v. Farris*, No. 2:22-cv-59, 2023 WL 6702781, at *2 n.3 (M.D. Tenn. Aug. 14, 2023), *report and recommendation approved*, No. 2:22-cv-59, 2023 WL 5867249 (M.D. Tenn. Sept. 11, 2023) ("In the defendants' motion to dismiss, they state that Farris is also entitled to qualified immunity. However, the defendants do not mention qualified immunity in their

11

limitations for conversion, denying that the claim covers trespass. MJOP at 15 (This "claim is for conversion and not trespass."). This is an odd choice, given that Williams' claims (obscure though they may be) explicitly mention both. That distinction is potentially dispositive here: "Claims for conversion are governed by the two-year statute of limitations under KRS 413.125. Meanwhile, trespass to property and trespass to chattel claims are subject to a five-year statute of limitations" in Kentucky. *Codrington v. Dolak*, No. 3:21-cv-665, 2024 WL 1837979, at *9 (W.D. Ky. Apr. 26, 2024), *aff'd in part, vacated in part, remanded*, No. 24-5831, 2025 WL 1892818 (6th Cir. July 9, 2025) (cleaned up). And wrongful-taking claims are subject to "Kentucky's two year statute of limitations." *Tritschler v. Haire*, No. 5:07-cv-437, 2009 WL 1515763, at *4 (E.D. Ky. June 1, 2009) (citing Ky. Rev. Stat. § 413.125).

At this stage, the Court declines to weigh in regarding the proper characterization of Williams' claim. Even if it were inclined to do so, neither side has pointed to aspects of the pleadings that would render the other side's characterization legally implausible at this stage of the case. What is clear is that Williams alleges that Bean, Boling, and the Hopkinsville Police Department seized her Glock 40 on October 21, 2021. Williams filed suit in January 2024. That means the statute of limitations has run to the extent she asserts conversion and wrongful-taking claims, but not to the extent she asserts a trespass-to-chattels claim. Whether these pleadings state a plausible and cognizable claim for trespass is not before the Court at this juncture.

**2.** Williams (not Baker) attempts to save her conversion, wrongful-taking, and trespass claims under Count V by advancing a series of overlapping tolling arguments. See Response to MJOP (DN 37) at 14. Many of these arguments are hard to decipher and confuse the merits of her property claim and the timeliness of its filing. But her principal position, it seems clear enough, is that pending criminal charges against Baker prevented her from timely filing her lawsuit based on the gun seizure.

True, the pendency of Baker's charges might've affected her ability to *physically* regain control of her gun, which apparently was held as evidence. But Williams offers no reason why it would've affected her ability to *legally* pursue control of that gun by filing a lawsuit. She already knew about the deprivation (having repeatedly requested the gun's return) and offers no reason why criminal charges against another stood in the way of her filing her own civil suit.

She also contends that the ongoing deprivation of her gun amounted to a continuing violation, which may sometimes extend a limitations period. But she cites

---

memorandum of law or in any way explain why they are entitled to dismissal on this basis. [So] [t]he Court will not consider [these] arguments.") (citations omitted).

12

no caselaw doing so in response to a conversion or wrongful-taking claim. Indeed, that doctrine appears "most commonly in Title VII cases" and is "rarely [applied] to § 1983 actions." *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003). And the logical conclusion of her argument would be to abolish statutes of limitations in any conversion case in which the property isn't returned before a lawsuit commences. *See Eidson v. Tenn. Dep't of Children's Services*, 510 F.3d 631, 635 (6th Cir. 2007) (continuing-violation doctrine applies only to "continual unlawful acts," not "continual ill effects from an original violation").

Next, she argues that the government *could've* lawfully held the gun as evidence but failed to "actually establish the probable cause [to] include the property as part of the defendant's criminal process." Response to MJOP at 16. How this relates to the accrual of the limitations period is unclear. Regardless, Williams offers no reason—other than her collateral attack on the indictment—to doubt that the grand jury's charge established probable cause.

Williams subsequently asserts that the Defendants "obstructed" her from filing suit, thereby entitling her to statutory tolling. Response to MJOP at 19. How they did so remains unclear, no matter how many times one reads Williams' response at pages 19–20. *Cf. Caperton v. A.T. Massey Coal*, 556 U.S. 868, 903 (2009) (Scalia, J., dissenting) ("Turn it over, and turn it over, for all is therein."). Again, falling back to the accrual of Baker's malicious-prosecution claim, *see* Response at 20, offers no help regarding the accrual date of her own conversion claim.

Finally, Williams advances an aggressive argument that the possibility of *Younger* abstention in a federal civil case implies the tolling of any limitations period involving a parallel state criminal case. "The criminal charges" against Baker, she maintains, "obstructed this action … by erecting an abstention barrier under *Younger v. Harris*, 401 U.S. 37 (1971)." Response to MJOP at 20.[17] This represents another category error: abstention doesn't control accrual. Indeed, as a federal trial judge in Tennessee explained in a similar context, abstention doctrine *specifically* ameliorates the risk of untimeliness based on any (hypothetical and here counterfactual) invocation of *Younger*: "a federal court deciding to abstain under *Younger* has the discretion to either dismiss the case without prejudice or hold the case in abeyance. In exercising this discretion, 'the court should also consider whether there are any statutes of limitations issues should the case be dismissed and the limitations clock continue to run.'" *Eidson v. Tennessee Dep't of Children's Services*, 477 F. Supp. 2d 923, 927 (E.D. Tenn. Mar. 6, 2007) (citations omitted) (quoting *Coles v. Granville,* 448 F.3d 853, 865 (6th Cir. 2006)), *aff'd sub nom. Eidson v. State of Tennessee Dep't of*

---

[17] During the hearing on these motions, Plaintiffs' counsel conceded he could not cite any authority supporting the proposition that the mere possibility of *Younger* abstention tolls the statute of limitations in a related civil case.

13

*Children's Services*, 510 F.3d 631 (6th Cir. 2007). *If* Williams had sued sooner, and *if* the Defendants raised *Younger* abstention as a defense, and *if* the criminal charges against the gun's owner satisfied the prerequisites for abstention, then the Court would've stayed rather than dismissed the lawsuit to avoid exactly the untimeliness issues that foreclose the claim now.

Williams doesn't expressly cite Count IX in reference to her tolling arguments, but the arguments seem directed at both Counts V and IX, so the Court construes them accordingly. Nevertheless, tolling is inappropriate here and doesn't save Williams' conversion and trespass claims, in either their federal or state varieties.

Claims V and IX may proceed against all Defendants to the extent they plead trespass. But the Court grants the motions to dismiss these claims insofar as they assert conversion and takings claims.

### E. Remaining Counts

Five claims remain—four from Baker and one from Williams. With one exception discussed below, each Defendant relies on the statute of limitations in seeking dismissal.

Because Congress has not enacted a federal statute of limitations for § 1983 claims, courts borrow the most analogous state-law limitations period. *Bonner v. Perry*, 564 F.3d 424, 430 (6th Cir. 2009) (citing *Owens v. Okure*, 488 U.S. 235, 236, 239 (1989)). But federal law governs accrual: "the statute of limitations begins to run when the plaintiff knows or has reason to know of the injury which is the basis of his action." *McCune v. City of Grand Rapids*, 842 F.2d 903, 905 (6th Cir. 1988).

**1. Baker.** All of his remaining claims fail as time-barred.

First is his § 1983 "failure to train and supervise" claim against the City, Newby, and Boling. Amended Complaint ¶¶ 65–72 (Count II). The limitations period for this claim is one year. *Phillips v. Ballard*, No. 5:17-cv-301, 2019 WL 2359571, at *8 (E.D. Ky. June 4, 2019) ("Tort claims arising under Kentucky law for negligence and failure to train or supervise also implicate a one-year limitations period.") (citing Ky. Rev. Stat. § 413.140(1)(a)). Here, the clock started running (at the latest) when Baker was arrested and charged in May 2022. He filed suit in January 2024—more than a year later.

For reasons passing understanding, Boling raises only a defense of absolute immunity with respect to Count II. *See* MTD at 7. He doesn't rely on the statute of limitations, despite asserting it in response to practically the entire set of claims against him. This is puzzling because all the other parties discuss the limitations period regarding these allegations—and because the claim is clearly time-barred. This is a rare situation, therefore, in which the most appropriate course is for the

14

Court to address the limitations period *sua sponte*. *See Stringfield v. Wadsworth Police Dep't*, 114 F.3d 1189 (6th Cir. 1997) ("Ordinarily, a complaint should not be dismissed as frivolous on the basis of an affirmative defense unless the defense is obvious from the face of the complaint. Here, the district court did not abuse its discretion in dismissing plaintiff's complaint because plaintiff's cognizable claims clearly are barred under Ohio's two year general statute of limitations.") (citations omitted). Normally the Court wouldn't take such a drastic step. But after two complaints, thorough discussion of the issue by all other parties, and Boling's own assertion of the defense with respect to related claims, the applicability of the statute of limitations seems patently obvious. Given these circumstances, and the absence of any apparent pushback by Plaintiff's counsel, dismissal is appropriate with respect to Boling alongside his three co-defendants.

Next, Baker brings a § 1983 "false arrest / imprisonment claim" against Bean and Boling. Amended Complaint ¶¶ 73–82 & pp. 16–17 (Count III). "In Kentucky, the statu[t]e of limitations for [a] claim for false arrest and imprisonment is one year." *Johnson v. Ward*, 43 F. App'x 779, 783 (6th Cir. 2002) (citing Ky. Rev. Stat. §§ 413.140(1)(a), (c)). Here, the clock started running no later than May 11, 2022, when Baker waived formal arraignment, marking the end of his detention without legal process. *Lucas v. Holland*, No. 17-5425, 2017 WL 4764472, at *2 (6th Cir. Sept. 26, 2017) ("[F]alse-arrest or false-imprisonment claims would have begun to run at the latest when detention without legal process ended."). Baker didn't file suit until January 2024—well over one year after his claim accrued.

His "Kentucky false arrest / imprisonment" claim against Bean and Boling meets the same fate. Amended Complaint ¶¶ 74–78 & pp. 18–19 (Count VI). The statute of limitations for this claim is one year. *See Johnson*, 43 F. App'x at 783 (citing Ky. Rev. Stat. §§ 413.140(1)(a), (c)). As was the case with his federal "false arrest and imprisonment" claim, the clock began to run—at the latest—when his detention without legal process ended. *See Lucas*, 2017 WL 4764472, at *2. Based on the pleadings, that occurred when he waived his formal arraignment on May 11, 2022. MJOP at 2; Reply (DN 40) at 3 (noting that Baker does not dispute the Defendants' characterization, which is at least consistent with Baker's difficult-to-follow allegations on this point). But Baker didn't file his claim until January 2024.

Finally, Baker brings a "Kentucky assault and battery claim" against Bean and Boling. Amended Complaint ¶¶ 83–87 & pp. 19–20 (Count VIII). In Kentucky, actions for assault and battery are subject to a one-year statute of limitations. *Jones v. Louisville/Jefferson County Metro Gov't*, 482 F. Supp. 3d 584, 591 (W.D. Ky. Aug. 31, 2020) (citing Ky. Rev. Stat. § 413.140(1)(a)). "State law claims for … assault and battery arising out of an arrest generally accrue at the time of the arrest." *Fox v. DeSoto*, 489 F.3d 227, 233 (6th Cir. 2007). Here, Baker was arrested on May 5, 2022,

but didn't file suit until January 2024. He offers no other authority or explanation for why this accrual date wouldn't control.

**2. Williams.** She has alleged one final claim: a "Kentucky *negligent* common law claim for trespass to property / wrongful taking / conversion." Amended Complaint ¶¶ 95–103 (Count X) (emphasis added).[18] How this relates to the omnibus property claims discussed above is unclear. So is whether her pleadings could survive scrutiny under Rules 8 and 12. No matter: under Kentucky law, "a common law negligence claim is subject to a one-year statute of limitations." *See Wessling v. Miner*, No. 5:24-cv-340, 2025 WL 1656636, at *3 (E.D. Ky. June 11, 2025) (citing *Phillips v. Lexington-Fayette Urban County Gov't*, 331 S.W.3d 629, 634 (Ky. Ct. App. 2010)). Williams alleges that Bean, Boling, and the Hopkinsville Police Department took her Glock 40 on October 21, 2021, but she didn't file suit until January 2024. Accordingly, the statute of limitations has run for her common-law negligence claim, so the Court dismisses this count.

## ORDER

As discussed above, the Court:

- dismisses Counts II, III, VI, VIII, and X as untimely under the applicable statutes of limitations;
- dismisses Count I against Boling in both his individual and official capacities, but denies the motions to dismiss with respect to the City;
- denies the motion with respect to Count IV against Bean in both his individual and official capacities and against Boling in his individual capacity only insofar as the claim rests on investigative conduct; dismisses Count IV (in its entirety) against Boling in his official capacity and in his individual capacity insofar as it alleges prosecutorial conduct;
- denies the motion with respect to Count VII in part against Boling in his individual capacity only—granting the motion insofar as it rests on allegations of prosecutorial conduct;
- takes no action on Count VII with respect to Bean, who did not move to dismiss that claim;
- denies the motion with respect to Counts V and IX with respect to Williams' trespass theory and grants the motion with respect to her wrongful-taking and conversion allegations.

---

[18] *See* above at n.15 (construing the "trespass to property" claim as a "trespass to chattels" claim).